```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
WESTERN INVESTMENT LLC,

                Plaintiff,           OPINION

        -against-                    10 Civ. 1399 (MGC)


DWS GLOBAL COMMODITIES STOCK FUND, INC.,

                Defendant.

----------------------------------X

APPEARANCES:

        LOWEY DANNENBERG COHEN & HART, P.C.
        Attorneys for Plaintiff
        One North Broadway, Suite 509
        White Plains, New York 10601

        By:  Richard W. Cohen, Esq.
             Vincent Briganti, Esq.
             Todd S. Garber, Esq.

        ROPES & GRAY LLP
        Attorneys for Defendant
        One International Place
        Boston, Massachusetts 02110

        By:  John D. Donovan, Jr., Esq.

        ROPES & GRAY LLP
        Attorneys for Defendant
        1211 Avenue of the Americas
        New York, New York 10036

        By:  Martin J. Crisp, Esq.
```

**Cedarbaum, J.**

Western Investment LLC ("Western Investment") sues DWS Global Commodities Stock Fund, Inc. (the "Fund") for violations of the Investment Company Act of 1940 (the "ICA"), the Maryland Control Share Acquisition Act, and the Fund's Articles of Incorporation.  Western Investment seeks a preliminary injunction prohibiting the Fund from implementing the change in investment strategy disclosed by the Fund in press releases of January 20 and 29, 2010.  Western Investment contends that the announced strategy represents a change in the Fund's investment objective, and therefore requires a shareholder vote pursuant to Section 13 of the ICA.  For the reasons that follow, Western Investment's motion is denied.

## BACKGROUND

The Fund is a closed-end investment company, organized under Maryland law in 2004.  It is listed on the New York Stock Exchange under the ticker symbol "GCS."  Western Investment is the Fund's largest stockholder.

In connection with its public offering, the Fund filed a registration statement (including a "Prospectus") describing its investment objectives and policies.  Under the subheading "Investment Objectives," the Prospectus states:

> The Fund's investment objective is capital appreciation with total return as a secondary objective.  The Fund's investment objectives and certain other policies are fundamental and may not be changed without the approval of shareholders (determined as provided for in the 1940

>Act).  Unless otherwise indicated, the Fund's investment policies are not fundamental and may be changed by the Board of Directors without the approval of shareholders, although we have no current intention of doing so.

(Prospectus at 20.)  In the following subsection, entitled "Principal Investment Focus and Philosophy," the Prospectus states:

>The Fund has a policy of concentrating its investments in commodities-related industries.  This investment policy is not fundamental and can be changed without the approval of shareholders.
>
>Under normal market conditions, the Fund will invest substantially all but not less than 80% of its total assets in equity and commodities-linked securities of companies in commodities-related industries or other issuers where the value of the investment is linked to changes in commodity prices or a commodities-related index, such as commodities-linked structured notes. . . .  The Fund intends to invest in commodities-linked derivative instruments, in particular in structured notes. . . .
>
>The Fund's policy of investing at least 80% of its total assets in equity and commodities-linked securities is not fundamental.  If the Board of Directors of the Fund changes this non-fundamental policy to one allowing the Fund to invest less than 80% of its total assets in equity and commodities-linked securities of commodities-related companies, the Fund will provide shareholders with at least 60 days' prior notice of such change if the change has not first been approved by shareholders, which notice will comply with the 1940 Act and the regulations thereunder.

(Prospectus at 20-21.)  The Prospectus also explains that "[c]ommodities-linked securities of companies in commodities-related industries include commodities-linked derivative instruments, in particular structured notes, and may also include

options, swaps and futures contracts." (Prospectus at 22.) The Fund has invested in a manner consistent with these policies from 2004 until the present.

On January 20, 2010, the Fund issued a press release containing the following statements: "[T]he Board of Directors has approved a change in the Fund's investment approach from a blended approach into an actively-managed direct commodity total return strategy. In conjunction with the strategy change, the Fund's investment objective will change from capital appreciation to total return."

On January 29, 2010, the Fund announced a clarification of the changes described in the press release of January 20:

> The Board of Directors has approved a change in the Fund's investment approach from a blended approach involving investment in companies in commodities-related industries and direct commodity investments to an actively-managed direct commodity strategy.
>
> The Fund will invest under normal circumstances in commodity-linked derivative instruments backed by a portfolio of fixed income securities . . . . This will replace the Fund's current investment policy of investing substantially all but not less than 80% of its total assets in equity and commodities-linked securities . . . .
>
> The Fund's January 20, 2010 announcement incorrectly noted that the Fund's investment objective would be changing. The Fund's current investment objective of capital appreciation with total return as a secondary objective will remain unchanged.

4

The press release of January 29 states that the changes are expected to take place on or about March 31, 2010.

On March 3, 2010, Western Investment filed an order to show cause seeking injunctive relief related to the Fund's planned changes as well as the election of directors. At a conference on March 5, Western Investment clarified that it sought to enjoin the Fund from implementing changes that would alter the Fund's investment objective without a shareholder vote. The parties filed supplemental memoranda limited to that issue on March 10, 2010.

## DISCUSSION

### I. Legal Standard For A Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must demonstrate: (1) irreparable harm in the absence of injunctive relief; and (2) a likelihood of success on the merits, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. See Faiveley Transp. Malmo AB v. Wabtec Corp, 559 F.3d 110, 116 (2d Cir. 2009).

### II. Western Investment's Claim Under Section 13(a)(3)

Section 8 of the ICA requires an investment company to recite in its registration statement "all investment policies . . . which are changeable only if authorized by

5

**shareholder vote," as well as "all policies . . . which the registrant deems matters of fundamental policy." 15 U.S.C. § 80a-8(b)(2) & (3)** (2006).  Section 13 prohibits an investment company from deviating from fundamental investment policies "unless authorized by the vote of a majority of its outstanding voting securities." 15 U.S.C. § 80a-13(a)(3).

Western Investment contends that the Fund's decision to shift its investment portfolio to emphasize commodity-linked derivative instruments represents a deviation from its investment objective of "capital appreciation with total return as a secondary objective."  Because the Fund's investment objective is fundamental, Western Investment maintains that this change will violate Section 13(a)(3) of the ICA absent shareholder approval.  Western Investment seeks to enjoin the Fund from implementing this policy unilaterally, but has failed to demonstrate that Section 13(a)(3) provides for a private right of action or that it would be entitled to a preliminary injunction if a private right existed.

A.  Private Right Of Action Under Section 13(a)(3)

When a statute does not expressly authorize a private right of action, the Supreme Court has directed courts to look to the intent of Congress in determining whether to imply a private right of action for violation of a federal statute.  See Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519 (2001).  Although courts of this district have previously assumed that such a right existed where it was not in dispute, see, e.g., Potomac Capital Mkts. Corp. v. Prudential-Bache Corp. Dividend Fund, Inc., 726 F. Supp. 87, 93 n.5 (S.D.N.Y. 1989), the Second Circuit has more recently held that there is no private right of action under other sections of the ICA which, like Section 13(a)(3), do not explicitly authorize one.  See Olmsted v. Pruco

6

Life Ins. Co. of N.J., 283 F.3d 429, 436 (2d Cir. 2002); Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 117 (2d Cir. 2007).

In Olmsted, the Second Circuit began with the presumption that because the ICA does not explicitly provide for a private right of action under Sections 26(f) and 27(i), Congress did not intend one. Id. at 432. It found this presumption strengthened by three features of the statute: first, Sections 26(f) and 27(i), which Congress added to the ICA in 1996, do not contain rights-creating language; second, Section 42 explicitly provides for enforcement of all provisions of the ICA by the SEC; and third, Section 36(b), added by Congress in 1970, explicitly creates a private right of derivative action for certain breaches of fiduciary duty by investment advisors. Id. at 433. After rejecting arguments in favor of implying a private right of action based on factors extrinsic to the language of the statute, the Court stated that past decisions recognizing a private right of action under other sections of the ICA, including Section 13(a)(3), "belong to an 'ancien regime.'" Id. at 434 & n.4 (quoting Alexander v. Sandoval, 532 U.S. 275, 287, 121 S. Ct. 1511, 1520 (2001)). Consistent with the analysis in Olmsted, the Second Circuit has also held that there is no private right of action under Sections 34(b), 36(a), and 48(a) of the ICA.

Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 117 (2d Cir. 2007).[1]

Western Investment argues that Olmsted does not control here because Congress reentered the field in the Sudan Accountability and Divestment Act of 2007 ("SADA"), when it amended Section 13 of the ICA to bar suits against an investment company based solely upon its divestment of securities issued in connection with business operations in Sudan. See Sudan Accountability and Divestment Act of 2007 § 4(a), Publ. L. No. 110-174, 121 Stat. 2516 (codified in relevant part at 15 U.S.C. § 80a-13(c)). Section 13(c)(1), inserted into the ICA through a provision of SADA entitled "Safe Harbor For Changes Of Investment Policies By Asset Managers," provides:

> Notwithstanding any other provision of Federal or State law, no person may bring any civil, criminal, or administrative action against any registered investment company, or any employee, officer, director, or investment adviser thereof, based solely upon the investment company divesting from, or avoiding investing in, securities issued by persons that the investment company determines, using credible

---

[1] Western Investment advances the theory that the Olmsted court "reached its conclusion because no court had previously recognized a private right of action under Sections 26(f) and 27(i)," and distinguishes Section 13(a)(3) on that ground. This theory, however, is undermined by Bellikoff, where each of the sections for which the Second Circuit found no private right of action were first enacted in 1940, and decisions of the "*ancien regime*" had previously recognized an implied right under at least Section 34(b). See Bellikoff, 481 F.3d at 117; cf. Brown v. Bullock, 194 F. Supp. 207, 231 (S.D.N.Y. 1961) (finding implied right of action under Section 34(b) of the ICA), aff'd on other grounds, 294 F.2d 415 (2d Cir. 1961).

8

> information that is available to the public, conduct or have direct investments in Sudan described in section 3(d) of the Sudan Accountability and Divestment Act of 2007.

15 U.S.C. § 80a-13(c)(1). The added section further provides that the limitation "does not prevent a person from bringing an action based on a breach of a fiduciary duty owed to that person with respect to [other investment decisions]." 15 U.S.C. § 80a-13(c)(2)(A). Western Investment cites <u>Northstar Financial Advisors, Inc. v. Schwab Investments</u>, 609 F. Supp. 2d 938 (N.D. Cal. 2009), <u>appeal docketed</u>, No. 09-16347 (9th Cir. June 29, 2009), for the proposition that because Congress inserted a bar on all suits based solely on divestiture from Sudan into Section 13 rather than creating a new section for a safe harbor, Congress must have intended that Section 13 otherwise provide for a private right of action. <u>Id.</u> at 944-45. However, Section 13(a) is not mentioned in Section 13(c). Section 13(c) speaks of "civil, criminal, or administrative action[s]" against investment companies and their advisers which might be brought under "any" provision of Federal or State law. Thus, the addition of Section 13(c) does not evince an intent on the part of the amending Congress to *create* a private right of action under Section 13(a).[2] Because Congress did not explicitly provide for a

---

[2] To the extent that latent in Western Investment's position is the argument that the addition of Section 13(c) to the ICA in 2007 ratifies decisions of lower courts assuming a private right of action under Section 13(a), I note that there is no support in

9

private right of action under Section 13 of the ICA as originally enacted or amended, the Second Circuit's examination of the statutory framework in <u>Olmsted</u> applies to this case. Accordingly, Western Investment has failed to show that Congress intended an implied private right of action under Section 13(a)(3).

**B.  Irreparable Harm**

In any event, Western Investment fails to show that it will suffer irreparable harm, the *sine qua non* of injunctive relief. The Second Circuit has stated that "[t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d. Cir. 2009) (citation and internal quotation marks omitted). Western Investment's argument that it will be effectively disenfranchised if the Fund's proposed

---

the legislative history for this view and that the Supreme Court has expressed skepticism regarding "ratification" arguments generally.  See <u>Sandoval</u>, 532 U.S. at 292 ("[W]hen, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments, we have spoken more bluntly: 'It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation.'" (quoting <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 165 (1989)).

changes are found to deviate from its investment objective remains speculative, and a decline in value of its shares as a result of the investment changes is compensable through money damages. Accordingly, Western Investment has not demonstrated an injury that cannot be remedied at the end of a trial on the merits.

### C. Likelihood Of Success

Western Investment has also failed to demonstrate a likelihood of success on the merits of its claim or sufficiently serious questions going to the merits with the balance of hardships tipping in its favor.

In support of its claim that the Fund plans to deviate from its investment objective, Western Investment highlights the statement in the Prospectus that the Fund will invest "not less than 80% of its total assets in equity and commodities-linked securities of companies in commodities-related industries or other issuers where the value of the investment is linked to changes in commodity prices or a commodities-related index." Yet in the same section, the Prospectus explicitly makes this investment focus "not fundamental," and states that it may be changed without a shareholder vote. Moreover, the Prospectus discloses that the Fund "intends to invest in commodities-linked derivative instruments," and states that "[c]ommodities-linked securities of companies in commodities-related industries include

11

commodities-linked derivative instruments." Accordingly, a mere change in investment focus toward commodities-linked derivative instruments does not itself entail a deviation from the Fund's investment objective.

To establish a likelihood of success on the merits, Western Investment would need to show that the Fund's proposed emphasis on commodities-linked derivative instruments so alters the blend of its portfolio that the Fund no longer seeks "capital appreciation with total return as a secondary objective." In support of that claim, Western Investment relies upon a January 20, 2010 press release in which the Fund stated that, "[i]n conjunction with the strategy change, the Fund's investment objective will change from capital appreciation to total return." However, the Fund corrected that statement in a January 29, 2010 press release, clarifying that it was merely changing its investment focus and that its "current investment objective of capital appreciation with total return as a secondary objective will remain unchanged." Although Western Investment dismisses the second press release as "double talk," the Fund's public statements do not themselves establish Western Investment's likelihood of success.

Western Investment also offers the declarations of industry professionals who opine that the Fund's proposed strategy deviates from its stated investment objectives, along with

12

government agency materials that make no mention of commodities-linked derivatives in the context of "capital assets" and "equity securities."  But the Fund has submitted dictionary definitions and the prospectuses of other funds to show that funds use a wide range of investment strategies, including investing in commodities-linked derivatives, consistent with an objective of "capital appreciation with total return as a secondary objective."

Because the Prospectus itself contemplates investment in commodities-linked derivative instruments and the parties have provided conflicting evidence regarding whether the degree to which the proposed strategy emphasizes derivatives constitutes a departure from the Fund's stated investment objective, Western Investment has not established a likelihood of success on its Section 13(a)(3) claim.  Furthermore, although Western Investment faces some hardship in the prospect of a delayed shareholder vote if it prevails on its claim, along with the potential for a decline in share value, preliminary injunctive relief would immediately interfere with the day-to-day management of the Fund.  Accordingly, Western Investment has failed to demonstrate a likelihood of success on the merits of its claim under Section 13(a)(3) or sufficiently serious questions going to the merits with the balance of hardships tipping in its favor.

13

## CONCLUSION

For the foregoing reasons, Western Investment's motion for a preliminary injunction is denied.

SO ORDERED.

Date:    New York, New York
         April 5, 2010

                                    S/_____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge