**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WESTERN INVESTMENT LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DWS GLOBAL COMMODITIES STOCK FUND, INC., | ) Civil Action No. 10-Cv-1399 (MGC) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR DECLARATORY JUDGMENT BARRING DEFENDANT'S ENFORCEMENT OF THE MARYLAND CONTROL SHARE ACQUISITION ACT**

John D. Donovan, Jr.
ROPES & GRAY LLP
One International Place
Boston, Massachusetts  02110-2624
(617) 951-7000

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036-8704
(212) 596-9193

*Attorneys for DWS Enhanced Commodity Strategy Fund, Inc. (f/k/a/ DWS Global Commodities Stock Fund, Inc.)*

April 30, 2010

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE...................................3

    The Parties ......................................................................................................................3

    Previous Proceedings and Order ....................................................................................4

ARGUMENT ....................................................................................................................6

I.    WESTERN CANNOT SHOW LIKELY SUCCESS ON THE MERITS
    BECAUSE THE COMPLAINT DOES NOT STATE A COGNIZABLE
    CLAIM AND THEREFORE SHOULD BE DISMISSED. ................................6

    A.    Western Does Not Have A Private Right of Action Under Section 18(i)
        of the Investment Company Act of 1940..................................................6

    B.    Western's Claim that Sterilization of Certain of its Shares Violates
        GCS's Articles of Incorporation and Section 3-702(c)(4) of the MCSAA
        Is Meritless..............................................................................................9

II.    WESTERN HAS NOT SATISFIED THE OTHER EQUITABLE
    REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF. ..............................13

    A.    The Hardships Imposed by an Injunction Forcing Rescission of the
        Fund's Adoption of the MCSAA Would Fall Disproportionately on GCS
        and the Vast Majority of its Stockholders. .............................................14

    B.    The Plaintiff Cannot Establish Irreparable Injury. .................................14

    C.    Plaintiff's Claims Are Likely Moot in View of the Current Proposal to
        Merge the Fund Into An Open-End Fund................................................16

    D.    The Court Should Not Enter a Preliminary Injunction or Declaratory
        Judgment That Is Merely Advisory. .......................................................18

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001)........................................................................................................7

*Browning Debenture Holders' Comm. v. Dasa Corp.*,
524 F.2d 811 (2d Cir. 1975)..........................................................................................18

*Cramer v. Devon Group, Inc.*,
No. 90 Civ. 7748 (PKL), 1990 WL 210306 (S.D.N.Y. Dec. 12, 1990) ............................7, 16

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987).........................................................................................................9

*Dan River, Inc. v. Icahn*,
701 F.2d 278 (4th Cir. 1983) .....................................................................................16, 17

*E.ON AG v. Acciona, S.A.*,
No. 06 Civ. 8720 (DLC), 2007 WL 316874 (S.D.N.Y. Feb. 5, 2007) ....................................13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)......................................................................................13, 14

*Gabelli Global Multimedia Trust Inc. v. Western Inv. LLC*,
No. RDB 10-0557 (D. Md.) ..........................................................................................3, 7

*Kelly v. Evolution Mkts., Inc.*,
626 F. Supp. 2d 364 (S.D.N.Y. 2009).............................................................................19

*Mazurek v. Armstrong*,
520 U.S. 968 (1997).......................................................................................................13

*Medimmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).......................................................................................................19

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr.*,
342 F. Supp. 2d 371 (D. Md. 2004)........................................................................7, 10, 12

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr.*,
485 F. Supp. 2d 631 (D. Md. 2007)............................................................................12, 13

*Olmsted v. Pruco Life Ins. Co. of N.J.*,
283 F.3d 429 (2d Cir. 2002)............................................................................................7

*Plant Indus., Inc. v. Bregman*,
 490 F. Supp. 265 (S.D.N.Y. 1980)..................................................................15

*Providence & Worcester Co. v. Baker*,
 378 A.2d 121 (Del. 1977) ............................................................................8

*Reuters Ltd. v. United Press Int'l, Inc.*,
 903 F.2d 904 (2d Cir. 1990)........................................................................14

*Tamplenizza v. Josephthal & Co.*,
 32 F. Supp. 2d. 702 (S.D.N.Y. 1999)..........................................................18

*Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*,
 No. 10 Civ. 1399 (MGC), 2010 WL 1404208 (S.D.N.Y. Apr. 4, 2010) ...................4, 5, 6, 14

## STATUTES

15 U.S.C. § 80a-18(i) (2006) ..........................................................6, 8, 9

Fed. R. Civ. P. 12(b)(6)..................................................................5

Fed. R. Civ. P. 65 ........................................................................5

Investment Company Act of 1940 ........................................................ passim

MD. CODE ANN., CORPS. & ASS'NS § 2-405 (West 2010) ........................................5

MD. CODE ANN., CORPS. & ASS'NS § 2-502(b)(1) (West 2010) .................................16

MD. CODE ANN., CORPS. & ASS'NS § 2-507(a) (West 2010) ...................................10

MD. CODE ANN., CORPS. & ASS'NS § 3-701 *et seq.* (West 2010)..............................7

MD. CODE ANN., CORPS. & ASS'NS § 3-701(e)(1) (West 2010)..................................8

MD. CODE ANN., CORPS. & ASS'NS § 3-702(c)(4) (West 2010)..................................11

## PRELIMINARY STATEMENT

The plaintiff continues to ask this Court for a preliminary injunction where no emergency exists, and for a declaratory judgment that is not likely to have any practical effect.

Western Investment, LLC ("Western") has invoked multiple legal theories to contend that at a stockholders' meeting scheduled for June 28, 2010, it should be able to vote 2.2% of DWS Enhanced Strategy Commodity Fund's (the "Fund") outstanding shares that it acquired *after* the Fund's Board of Directors opted into the Maryland Control Share Acquisition Act (the "MCSAA").   Whether 2.2% of the outstanding shares could conceivably make a difference in the election, and thus could even possibly justify an injunction, is utter speculation.

The legal grounds for this speculative claim, moreover, are meritless.  The plaintiff's primary claim under the Investment Company Act of 1940 cannot be maintained because of the absence of a corresponding private right of action.  Western claims not to press this claim "now," no doubt because of that fatal flaw.

Western's alternative claim under state law alleges that a single sentence in the Fund's Articles of Incorporation prohibited the Board's adoption of the MCSAA.  But the sentence the plaintiff references only recites a basic provision of the Maryland General Corporation Law, of which the MCSAA is *also* a part.  Self-evidently, one provision of the General Corporation Law does not trump another feature of the same statute;  the two elements are not mutually exclusive. The plaintiff simply ignores language in the MCSAA that singles out its application to closed-end funds, explicitly authorizes such funds to adopt the MCSAA, and thus confirms its consistency with the balance of the statute.

The plaintiff's final claim that all its shares are "grandfathered" from enforcement of the MCSAA is based on a construction of the statute that has been described as unreasonable by the only court to consider it.

In any event, *all* of the plaintiff's claims will likely be moot after the June 28 stockholders' meeting.  Western's manufactured attempt to undo the Board's adoption of the MCSAA is part of its larger effort to seize control of the Fund and obtain a majority on its board of directors, and terminate the Fund's investment advisory agreement – all in its own interest. But if the shareholders adopt a proposal to merger the Fund with and into another, open-end fund with a similar investment objective at the June meeting, the Fund will cease to exist, there will be no corporate board for the plaintiff to seek to control, there will be no contract for it to attempt to terminate, and the MCSAA will not affect the surviving entity at all.

This Court should accordingly decline  to render advisory opinions for the plaintiff's benefit.  Indeed, even if the shareholders do *not* endorse the merger and render the plaintiff's claims moot, Western's claims *still* could be meaningless because the MCSAA – by Western's own calculation – only influences a tiny number of shares that are not likely to make a difference in any election.   If they do, the Court has ample power to fashion appropriate post-election relief.  But on those grounds, too, the Court should not enter a ruling that might have only an advisory effect.

For these reasons, the plaintiff's motion for a preliminary injunction should be denied. And because in all events the plaintiff's claims have no legal merit, Western's complaint should be dismissed for failure to state a cognizable claim.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

*The Parties*

The plaintiff Western Investment, LLC ("Western") is an "activist" hedge fund, controlled by its single member Arthur Lipson.  Western's investment strategy is to acquire a position in closed-end mutual funds, and then engage in a variety of "raider's" tactics – including efforts to obtain control of the board, terminate the investment adviser's management contract, or seek to "open end" the fund through mergers or otherwise – in order to extract "value" for its investment.[1]

DWS Enhanced Commodity Strategy Fund, Inc. (formerly known as DWS Global Commodities Stock Fund, Inc.) ("GCS" or the "Fund") is a non-diversified, closed-end investment company whose investment objective is capital investment, with total return as a secondary objective.  GCS was launched in 2004 and is organized as a corporation under Maryland law.  The Fund is registered under the Investment Company Act of 1940 (the "ICA"), and its shares trade on the New York Stock Exchange under the symbol "GCS."

Since 2008, Western has sought to control the Fund and has engaged in multiple tactics in support of its effort.  In 2008, it conducted an unsuccessful proxy contest to elect five directors to the Fund's board.  It has continued to agitate for change in its own interest, including by filing this lawsuit.  Most recently, Western proposed to nominate another slate of directors, and submitted a stockholder proposal to terminate the Fund's investment advisory contract with Deutsche Investment Management Americas, Inc. ("DIMA").

---

[1] For example, Western and its affiliates are currently targeting Gabelli Global Multimedia Trust, another non-diversified, closed-end fund incorporated and existing under the laws of Maryland.  The parties are currently in litigation.  *See Gabelli Global Multimedia Trust Inc. v. Western Inv. LLC*, No. RDB 10-0557 (D. Md.) (hereinafter "*Gabelli*").

3

Among other responses to these efforts – and to protect the vast majority of stockholders of the Fund *not* affiliated with Western -- on September 11, 2009, GCS's Board of Directors adopted a resolution opting into the Maryland Control Share Acquisition Act ("MCSAA") "in order to enhance its ability to protect the interests of stockholders."  (GCS 9/11/09 Press Release; Ex. 1.)  GCS filed a notice on Form 8-K to the same effect on September 14, 2009.  (*See* GCS, Form 8-K (Sept. 14, 2009); Ex. 2.)

The Fund's annual stockholders' meeting is scheduled for June 28, 2010.  At that meeting, stockholders will consider the election of Directors for the Fund and Western's proposal to terminate the investment management agreement between the Fund and DIMA.  (*See* GCS 3/10/10 Press Release; Ex. 3.)  In addition, stockholders will vote on a proposal to merge the Fund into DWS Enhanced Commodity Strategy Fund, a registered open-end mutual fund with a similar investment objective.  (*See* GCS 4/9/10 Press Release; Ex. 4.)

***Previous Proceedings and Order***

On March 3, 2010, the plaintiff sought a temporary restraining order to bar GCS from implementing certain changes in its investment strategy, to compel GCS to hold a stockholders' meeting on or before April 30, 2010, and to require GCS to count any shares of GCS stock beneficially owned by Western for purposes of that stockholders' meeting.  At the emergency temporary restraining order hearing convened at its request at one day's notice, Western admitted that no emergency injunctive relief was required for any of its claims.  The effect of merging into an open-end fund will be to eliminate any "discount" between the Fund's net asset value and its market price.

On April 5, 2010, this Court denied Western's motion to enjoin GCS from making the announced changes in its investment policies.  The Court held that the plaintiff lacked a private right of action under Section 13(a)(3) of the ICA "[b]ecause Congress did not explicitly provide

4

for" such a right "as originally enacted or amended." *Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*, No. 10 Civ. 1399 (MGC), 2010 WL 1404208, at *4 (S.D.N.Y. Apr. 4, 2010). The Court additionally held that even if the plaintiff had a private right of action, it had failed to demonstrate either irreparable injury or a likelihood of success on the merits. *Id.* at *4-*5.

The plaintiff has since renewed its request for judicial intervention. It now seeks a preliminary injunction – one that is tantamount to a final declaration on the merits – that Western is entitled to vote certain shares at the annual stockholders' meeting currently scheduled for June 28, 2010. The plaintiff claims that the Board's enforcement of the MCSAA violates Section 18(i) of the ICA, that refusing to permit certain of Western's shares to vote violates the MCSAA itself, and that adoption of the MCSAA is inconsistent with the Fund's Articles of Incorporation. Western seeks an injunction preventing the fund from refusing to "count" 347,418 of its shares (representing only 2.2% of the Fund's outstanding shares) on the matters to be voted upon at the June 28 stockholders' meeting.

The plaintiff's other claims are both without merit and likely moot.[2] As set forth below, the plaintiff's claims regarding the MCSAA are without legal merit, and Western has otherwise failed to satisfy the conjunctive elements of likely success, irreparable harm that cannot otherwise be remedied at law, and the balance of hardships in its favor necessary to justify an

---

[2] The First Amended Complaint advanced two other claims. As the Court is aware, Western claimed that certain investment policy changes were impermissible under Section 13(a)(3) of the Investment Company Act without a shareholder vote. As this Court's opinion on the plaintiff's motion for a temporary restraining order and preliminary injunction held, that claim had no merit both because Section 13 does not afford a private right of action and because the proposed change was not "fundamental." The investment strategy change at issue has now been adopted and the claim is moot. Western also alleged that the Fund's ostensible failure to hold an election of directors violated Section 16 of the Investment Company Act, and the pleading sought an order to compel such a meeting. (Pl.'s Am. Compl. ¶ 116.) But Section 16 also does not support a private right of action, and the directors here "held over" in the absence of lawfully elected successors as is permitted under Section 2-405 of the Maryland General Corporation Law, MD. CODE ANN., CORPS. & ASS'NS § 2-405 (West 2010), and a stockholders' meeting is scheduled to occur on June 28. So plaintiff's Section 16 claim also is both without merit and moot.

injunction.  For the reasons set forth below, both under Fed. R. Civ. P. 65 and Fed. R. Civ. P.

12(b)(6), the plaintiff's motion for an injunction should be denied and the complaint should be

dismissed for failure to state a cognizable claim.

## ARGUMENT

I.  **WESTERN CANNOT SHOW LIKELY SUCCESS ON THE MERITS
    BECAUSE THE COMPLAINT DOES NOT STATE A COGNIZABLE
    CLAIM AND THEREFORE SHOULD BE DISMISSED.**

   A.  *Western Does Not Have A Private Right of Action Under Section 18(i) of the
       Investment Company Act of 1940.*

This Court ruled on April 5 that the plaintiff had no private right of action under Section

13(a)(3) of the Investment Company Act of 1940 (the "ICA").  *Western Inv. LLC v. DWS Global

Commodities Stock Fund, Inc.*, No. 10 Civ. 1399 (MGC), 2010 WL 1404208, at *3-*4. The

plaintiff has given this Court no reason to conclude that its claim under Section 18(i) of the ICA

should be treated differently.  As with Section 13(a)(3), Section 18(i) lacks *any* language, either

explicit or implicit, to suggest that Congress intended to create a privately enforceable right of

action.[3]

Although Western's complaint pleads that adoption of the MCSAA violates Section 18(i)

of the ICA, in its most recent court filing the plaintiff has announced its decision to forego, at

least temporarily, the argument that alleged sterilization of certain shares violates Section 18(i)

---

[3] Section 18(i) states:

> Except as provided in subsection (a) of this section, or as otherwise required by law, every share
> of stock hereafter issued by a registered management company (except a common-law trust of the
> character described in section 16(c)) shall be a voting stock and have equal voting rights with
> every other outstanding voting stock: *Provided*, That this subsection shall not apply to shares
> issued pursuant to the terms of any warrant or subscription right outstanding on March 15, 1940,
> or any firm contract entered into before March 15, 1940, to purchase such securities from such
> company nor to shares issued in accordance with any rules, regulations, or orders which the
> Commission may make permitting such issue.

15 U.S.C. § 80a-18(i) (2006) (emphasis in original).

of the ICA, in recognition of the Court's ruling under Section 13(a)(3).  (Pl.'s Reply Mem. of

Law, at 5 & n.7.)  But the plaintiff's purported "preservation" of a claim on which it makes no

argument does not justify a conclusion that Section 18(i) is not privately enforceable.[4]  There

simply is no basis – under this Court's prior opinion and the Second Circuit's holding in *Olmsted*

*v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429 (2d Cir. 2002) – to contend now or later that a private

right of action exists under Section 18(i).[5]

Even if there is a private right of action under Section 18(i), the plaintiff's contention that

the ICA's "one share one vote" rule conflicts with the MCSAA, (MD. CODE ANN., CORPS. &

ASS'NS § 3-701 *et seq.* (West 2010)), confuses "an issue of dilution of economic interest and

corresponding voting power . . . with the voting rights of the shares themselves."  *See Neuberger*

*Berman Real Estate Income Fund, Inc. v. Lola Brown Tr.*, 342 F. Supp. 2d 371, 376 (D. Md.

2004) (hereinafter "*Neuberger I*").  In *Neuberger I*, the Court upheld a shareholder rights plan

that had a similar defensive effect as the MCSAA.  Indeed, in that case the fund in question

opted into the MCSAA, though the court never had to reach the question of whether that election

---

[4] Western perhaps is not advancing its claim under Section 18(i) of the ICA because it would then be simultaneously asserting inconsistent legal positions in concurrent litigations.  In the *Gabelli* litigation, Western takes a position precisely *opposite* to the position it asserts here.  In *Gabelli*, Western steadfastly relies on *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429 (2d Cir. 2002), to aggressively advance the contention that "virtually every federal court considering the issue has found that no implied private rights of action under the 1940 Act."  Docket Entry 6, Western's Mem. of Law at 5, *Gabelli*, No. RDB 10-0557 (D. Md. Mar. 10, 2010); *see also* Docket Entry 23, Western's Supp. Mem. of Law, *Gabelli*, No. RDB 10-0557 (D. Md. Mar. 16, 2010).  That position directly contradicts Western's position here.  Indeed, on April 1, the United States District Court for the District of Maryland *granted* Western's motion to dismiss and ruled that the *Gabelli* plaintiff lacked standing to assert private causes of action under Sections 12(d)(1)(A) and 48 of the ICA.  *See* Docket Entry 29, *Gabelli*, No. RDB 10-0557, 2010 WL 1253164 (D. Md. Apr. 1, 2010).

[5] The plaintiff's attempt to "preserve" that argument until some later (unknown) day flatly confirms that Western is not and will not be irreparably harmed by any purported Section 18(i) violation.  *See Cramer v. Devon Group, Inc.*, No. 90 Civ. 7748 (PKL), 1990 WL 210306, at *5 (S.D.N.Y. Dec. 12, 1990) ("'Significant delay in applying for injunctive relief' may be a basis for denying such relief, and tends to negate a finding of irreparable harm." (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985))).  The supposed harm that Western claims to suffer here – sterilization of certain of its shares – is the same regardless of whether it is being alleged under a purported violation of Section 18(i) of the ICA, GCS's Articles of Incorporation, or the Board's application of the MCSAA.  One can only conclude then that *none* of Western's remaining claims present either the "irreparable harm" or the exigencies it has suggested.

was permissible under the ICA.  The requirement that *stockholders* with control shares in the present case must obtain approval of other stockholders to vote their shares does not change the fact that all *shares* have equal voting rights.  *Id*.

The "one share one vote" proviso of the ICA therefore poses no conflict.  "The voting power of the stock in the hands of [Western] is not differentiated from all others in its class; it is the personal right of [Western] to exercise that power that is altered by the size of its holding.  In the hands of smaller stockholders, unrestrained in the exercise of their voting rights, the same stock would have voting power equal to all others in the class."  *Providence & Worcester Co. v. Baker*, 378 A.2d 121, 123 (Del. 1977).  A stockholder that has triggered the MCSAA may sell its excess "control shares," and the buyer of those shares would have all voting rights that such shares would otherwise possess absent the application of the MCSAA.

Section 18(i)'s focus on the rights of *shares* as opposed to the rights of particular *stockholders* is confirmed by the measure's textual requirement that "every *share* of stock hereafter issued . . . shall be a voting stock."  15 U.S.C. § 80a-18(i) (2006) (emphasis added).  This provision speaks to the character of the shares themselves as of the time of issuance.  But it does not address the possible limitation on the exercise of voting rights by a shareholder; and certainly does not address any supposed limitations that arise from an investor's voluntary action to purchase shares in excess of a threshold.

This is corroborated by Maryland law.  The statute does not limit voting rights on common shares *at the time of issuance*, though the MCSAA may restrict the exercise of those rights *by certain stockholders* later.  Under the Maryland General Corporation Law ("MGCL"), the acquisition of shares directly from the Fund can never result in a control share acquisition. *See* MD. CODE ANN., CORPS. & ASS'NS § 3-701(e)(1) (West 2010).  Thus, a stockholder that

purchases shares from the Fund retains voting rights with respect to those shares even if the purchase causes the shareholder to own shares in excess of the relevant threshold.

Additionally, Section 18(i) includes, as an exception, the phrase "[e]xcept as . . . otherwise required by law."  15 U.S.C. § 80a-18(i) (2006).  In light of the Maryland legislature's targeted action in 2000 to amend the MGCL to extend the MCSAA to registered closed-end funds, this savings clause supports a conclusion that Section 18(i) should be interpreted with deference to state corporate law.  While the determination by the Fund's Board to submit to the MCSAA's control may be a matter of discretion, once that determination has been made and the opt in is effective, the limitation on voting stock is "required" by state law.[6]

Based upon the foregoing, Western cannot establish likely success on the merits of its claim under Section 18(i) of the Investment Company Act.  To the contrary, because its allegations do not even state a cause of action, the plaintiff's claim under Section 18(i) of the ICA should be dismissed.

**B.**  ***Western's Claim that Sterilization of Certain of its Shares Violates GCS's Articles of Incorporation and Section 3-702(c)(4) of the MCSAA Is Meritless.***

Western's argument that the Fund's adoption of the MCSAA violated the Fund's Articles of Incorporation stems from a single sentence in the charter.  Article V, Paragraph 4 of the Fund's organic document provides: "Each share of Common Stock shall entitle the holder thereof to one vote."  (*See* Ex. 5 at 2.)  This provision merely restates Section 2-507(a) of the MGCL.[7]  The purpose of including this language in the Articles is not to limit a Maryland

---

[6] *Cf. CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 84 (1987) ("The desire of the Indiana Legislature to protect shareholders of Indiana corporations from this type of coercive offer does not conflict with the Williams Act. Rather, it furthers the federal policy of investor protection. . . . The longstanding prevalence of state regulation in this area suggests that, if Congress had intended to pre-empt all state laws that delay the acquisition of voting control following a tender offer, it would have said so explicitly.") (upholding the Control Share Acquisitions Chapter of the Indiana Business Corporation Law).

[7] The relevant section states:

corporation's ability to invoke other provisions of the MGCL.  Rather, it affords such a corporation the opportunity to state that it is not creating multiple classes of shares, such as non-voting preferred, or classes with magnified voting rights.  The recitation is aimed at the basic capital structure of the corporation and resolves in advance the power dynamics between different layers in that structure.  But nothing about the sentence seeks to trump *other* measures permitted under Maryland law.  And it could not.  One element of the corporation law does not supersede another.

This sentence is accordingly common in charters of Maryland corporations.[8]  Indeed, the Articles of Incorporation of the closed-end fund in the *Neuberger Berman* litigation cited above contained a similar recitation.  *See* Articles of Incorporation, Neuberger Berman Real Estate Fund, Inc. at 3, http://www.sec.gov/Archives/edgar/data/1187520/000089843202000634/n52239 6.txt ("Unless otherwise provided in this Articles, on each matter that is submitted to a vote of the stockholders, each holder of a share of capital stock of the Corporation shall be entitled to one vote for each such share registered in such holder's name on the books of the Corporation. . . .").

---

Unless the charter provides for a greater or lesser number of votes per share or limits or denies voting rights, each outstanding share of stock, regardless of class, is entitled to one vote on each matter submitted to a vote at a meeting of stockholders.  However, a share is not entitled to be voted if any installment payable on it is overdue and unpaid.

Md. Code Ann., Corps. & Ass'ns § 2-507(a) (West 2010).

[8] To provide just one prominent example, *all* of the publicly available (through the online corporate charter database maintained by the Maryland State Department of Assessments and Taxation) Articles of Incorporation for the Maryland closed-end funds of the world's largest money manager, BlackRock, Inc., also feature this provision based on Section 2-507(a) of the MGCL.  See, e.g., the Articles of Incorporation of BlackRock Corporate High Yield Fund V, Inc., BlackRock Corporate High Yield Fund VI, Inc., BlackRock Credit Allocation Income Trust I, Inc., BlackRock Credit Allocation Income Trust II, Inc., BlackRock Diversified Income Strategies Fund, Inc., BlackRock Enhanced Government Fund, Inc., BlackRock Floating Rate Income Strategies Fund, Inc., BlackRock Floating Rate Income Strategies Fund II, Inc., and BlackRock Senior High Income Fund, Inc.  The Articles of Incorporation of Maryland corporations filed after August 1, 2001 can be accessed on the Charter Record Search website of the Maryland State Department of Assessments and Taxation, Taxpayer Services Division, at http://sdatcert3.resiusa.org/UCC-Charter/CharterSearch_f.aspx.

Western's argument reduces to saying that the MCSAA could *never* apply because Section 2-507(a) *always* states that each share of stock has one vote – whether it is recited in the charter or not.  That cannot be correct.  The MCSAA was enacted to supplement and complement the other provisions of the MGCL.  Indeed – in a passage from the statute that Western conspicuously omits – the MCSAA specifically states that the GCS's Board may opt into the MSCAA by adopting a Board resolution.[9]  The MCSAA does not require amendment of the Fund's Bylaws or Articles of Incorporation.

In all events, under the MCSAA each *share* of common stock is still given equal treatment.  The MCSAA achieves its purpose by limiting the voting rights of certain *stockholders*, including stockholders who, as here, already owned in excess of 10% of the shares outstanding at the time the MCSAA is adopted.  It is only shares in the hands of such a stockholder that are "control shares."  But none of the shares issued by GCS are "control shares;" they might become "control shares" only in the hands of particular stockholders who voluntarily assume that status through their own actions.  The legislative history of the MCSAA corroborates that conclusion:

> House Bill 179 – The Control Share Acquisition Statute is designed to prevent the first tier of a two-tiered takeover – the initial acquisition of control shares – *in other words, the voting rights.*  The bill provides that control shares of the target corporation acquired in a control shares acquisition have no voting rights except to the extent approved by the affirmative vote of two-thirds of all the votes entitled to be cast (excluding all interested shares) at a meeting of stockholders.  Thus, the raider may acquire shares, but the stockholders decide at the next meeting *whether the raider may exercise voting rights.*

Legislative History of Chapter 51, Bill 179, "Corporations and Associations – Control Share Acquisitions," file obtained from Maryland Department of Legislative Services, Office of Policy

---

[9] Under Section 3-702(c)(4) of the MCSAA, "a corporation registered under the Investment Company Act of 1940 as a closed end investment company" can opt into the MCSAA if "its board of directors adopts a resolution to be subject to this subtitle. . . ."  MD. CODE ANN., CORPS. & ASS'NS § 3-702(c)(4) (West 2010).

Analysis; Ex. 6 at 21 (emphasis added).[10]  The plaintiff simply ignores the distinction between sterilization of *shares* and sterilization of rights exercisable by certain *stockholders*.  *Neuberger I*, 342 F. Supp. 2d at 375.

Finally, the Fund's interpretation of § 3-702(c)(4) of the MCSAA, which "cap[s] [Western's] exemption at the number of shares it held at the time of the opt-in," has been interpreted by the only court to address this issue directly as "the *only* reasonable interpretation of the statute."  *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr.*, 485 F. Supp. 2d 631, 641 (D. Md. 2007) (hereinafter "*Neuberger II*") (emphasis added).  GCS's interpretation is also consistent with the stated purpose of the amendments made to the MCSAA in 2000.  *See* Bill Analysis, House Bill 851, Senate Judicial Proceedings Committee, 2000 Maryland General Assembly; Ex. 8 at 4 ("The bill also allows closed-end investment companies to elect to be subject to, and *obtain the advantages of*, the control share acquisition statute.") (emphasis added).

The plaintiff's contrary interpretation of the statute would entitle Western to buy and vote as many additional shares as it desired.  But according to the Court in *Neuberger II*, "[i]f the statute were interpreted in such a manner, then the protection the law intended to afford to minority shareholders from coercive, hostile takeover attempts would be merely illusory."  *Id.* Considering the MCSAA's legislative history, and that *Neuberger II* held the Fund's interpretation of the statute to be the "only reasonable" one, the plaintiff cannot meet its

---

[10] *See also* Maryland State Bar Association, Section on Corporation, Banking and Business Law, Special Committee on Corporate Acquisitions, Report (Mar. 2, 1988); Ex. 7 at 1-2, 10 ("The Special Committee [on Corporate Acquisitions of the Maryland State Bar Association's Section on Corporation, Banking and Business Law, which was appointed in response to a request by the President of the Maryland Senate,] believes that this legislation is significant for the protection of Maryland corporations and their stockholders in view of the substantial growth of hostile takeover activity, which is often accompanied by potential coercion of and discrimination against minority stockholders. . . . As a matter of corporate governance, the control share statute regulated the internal relationship between the stockholders and a corporation, a matter recognized by the Supreme Court to be a proper consideration of state law.  *The statute affirms the power of stockholders to control the constituent or structural aspects of a corporation.*") (emphasis added).

heightened requirement of establishing a "clear" or "substantial" likelihood of success on the merits. To the contrary, because Western's cramped reading of the statute is plainly wrong, as *Neuberger II* confirms, its claim should be dismissed outright.

## II.  WESTERN HAS NOT SATISFIED THE OTHER EQUITABLE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF.[11]

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). In order to obtain this extraordinary remedy, an applicant must traditionally demonstrate "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (internal quotations omitted).

Preliminary injunctions normally enjoin a defendant from prospectively acting in a certain way, or to prevent repetition of past behavior. That is not the case here, since GCS opted into the MCSAA over *seven months* ago. Since Western is requesting relief that will "alter rather than maintain the status quo, [it] must meet a heightened standard which requires the demonstration of a 'clear' or 'substantial' likelihood of success on the merits." *E.ON AG v. Acciona, S.A.*, No. 06 Civ. 8720 (DLC), 2007 WL 316874, at *7 (S.D.N.Y. Feb. 5, 2007).

---

[11] From the very beginning of this litigation, the plaintiff's requests for relief have presented a moving target. What began as a request for three separate temporary restraining orders turned within a matter of minutes into a single request for a preliminary injunction, with the other two issues to be determined at a later date. Western wrongly suggests that the Fund has been in default for a failure to reply, but then reserves for itself the right to address its ICA § 18(i) claim at a later date of its choosing, even though it had initially suggested that its 18(i) claim required emergency intervention.

GCS now understands plaintiff's April 12 and April 19 communications with this Court to request a preliminary injunction with a declaratory judgment. But Western has not briefed the law and facts related to the request for a preliminary injunction in either of its most recent communications to this Court. To the extent that plaintiff has only asked this Court for a declaratory judgment, such a judgment without an injunction would be moot and would have no practicable effect. (*See infra* Section 3.)

The plaintiff has not carried its heavy burden.

### A. The Hardships Imposed by an Injunction Forcing Rescission of the Fund's Adoption of the MCSAA Would Fall Disproportionately on GCS and the Vast Majority of its Stockholders.

Western has failed to demonstrate any real chance of success on the merits of its claim that any shares acquired after September 11, 2009, are exempt under the MCSAA.  In addition, the hardships resulting from Western's proposed injunction would fall disproportionately on GCS and its non-Western stockholders.  The Board of Directors adopted the MCSAA as a measure to protect the 87% of Fund shareholders *other* than Western, and who might not share Western's personal interests or agree with its individual strategy to force change at the Fund in its own interest.  The public policy of Maryland – as embraced by and codified in the MCSAA – authorizes boards to protect their shareholders against raiders like Western.  But the balance between the interests of a corporate raider and the great majority of shareholders that the Board represents would be upset by an injunction that strips the Fund and its shareholders of the MCSAA's protections.  Accordingly, the balance of hardships weighs decidedly *against* Western.  *See Faiveley Transp.*, 559 F.3d at 116.

### B. The Plaintiff Cannot Establish Irreparable Injury.

"A showing of probable irreparable harm is the single most important prerequisite" for the issuance of injunctive relief.  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted).  This Court has said that "to satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Western Inv. LLC*, 2010 WL 1404208, at *4.  The harm alleged by Western, however, is *both* remote and speculative, and *neither* actual nor imminent.

First, the stockholders' meeting has been noticed for June 28, 2010. It is not clear how an emergency exists with some two months left before the meeting. Second, the harm alleged by Western – that its voting of 2.2% of the shares outstanding "could" be outcome determinative – is based on so many assumptions that it strains credulity. To make out its claim of "irreparable" harm, the plaintiff relies on at least the following extraordinary array of contingencies. Western *presumes* that: (1) other stockholders would vote differently if they learned that Western was able to vote the additional 2.2% shares at issue; (2) the stockholders that voted at the October 2008 stockholders' meeting are of the same identity as the stockholders that will be voting at the meeting scheduled for June 28, and that even if the stockholders *were* of the same identity, all of them would vote exactly as Western predicts, if they were to vote at all; (3) voter turnout at a future stockholders' meeting will be the same as it has been in years past; (4) absent a voting agreement, those stockholders that have said that they will vote with Western will actually do so; and (5), most importantly, that its 2.2% will *make a difference* in the election. Courts simply do not grant injunctions on such claims of *imagined* harm, much less *contingent* injury.

The absence of irreparable harm is also clearly evidenced by the ability of this Court to decide after the stockholders' meeting whether the votes at issue would have made a difference. *Cf. Plant Indus., Inc. v. Bregman*, 490 F. Supp. 265, 271 (S.D.N.Y. 1980) ("To allow an election to proceed . . . does not in and of itself work an irreparable injury on the [challenging] party. . . . The Court possesses the power, if necessary, to void the election, order resolicitation and otherwise 'unscramble' this kind of transaction."). If it ever turns out that the 2.2% of the outstanding shares that Western wants "counted" conceivably makes a difference on any matter voted upon at the June 28 stockholders' meeting, this Court has ample power to fashion a post-election remedy.

Finally, it took nearly six months after the Fund's announcement that it had opted into the MCSAA for the plaintiff to file a request for emergency relief.  This substantial delay suggests that no exigency really exists.  *Cramer v. Devon Group, Inc.*, 1990 WL 210306, at *5 ("'Significant delay in applying for injunctive relief' may be a basis for denying such relief, and tends to negate a finding of irreparable harm." (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985))).

A failure to show irreparable harm is fatal to any request for a preliminary injunction. There is no emergency at this stage, and the plaintiff simply cannot show that it will be irreparably harmed at the stockholders' meeting by sterilization of the shares it acquired after September 11, 2009.  Plaintiff's request for a preliminary injunction should be denied.

## C.  *Plaintiff's Claims Are Likely Moot in View of the Current Proposal to Merge the Fund Into An Open-End Fund.*

GCS has shown that its adoption of the MCSAA is consistent with the language of the statute, court precedent on a nearly identical set of laws and facts, and GCS's own Articles of Incorporation.   But even if this Court were to rule in Western's favor on the merits, it is likely that *all* of the plaintiff's claims will shortly be moot.  In its April 19 reply memorandum, Western proposed a variety of iterations of how votes *may* be cast to show how voting of the after-acquired shares *may* be dispositive.[12]  Those predictions are mere speculation.  A party

---

[12] The plaintiff has also continued its indefensible reliance on *Dan River, Inc. v. Icahn*, 701 F.2d 278 (4th Cir. 1983). Here, the plaintiff is at best misreading Dan River.  The sterilization at issue in *Dan River* "prevent[ed] Icahn from exercising *any* of the right[s] which inhere in [its] shares."  *Id.* at 282 (emphasis added).  This included preventing Icahn from "voting, from calling shareholder meetings, from seeking proxies and from attempting in any way to change the management or board of directors of Dan River until the merits of the action [were] resolved."  *Id.*  It defies logic to compare such action to the current situation, where Western retains all of the rights which inhere in its shares except for the voting right of certain shares, as has been explicitly authorized by the Maryland General Assembly.  A special meeting of the stockholders of GCS can still be held "on the written request of stockholders entitled to cast at least 25% percent of all votes entitled to be cast at the meeting."  MD. CODE ANN., CORPS. & ASS'NS § 2-502(b)(1) (West 2010).  Western is still allowed to solicit proxies, and will likely do so for the stockholders' meeting scheduled for June 28, 2010.  And Western has already proposed its own slate of directors. These differences are significant and render the *Dan River* decision entirely distinguishable.  In any event, it was the

cannot establish irreparable harm merely by suggesting certain votes "might" make a difference. Perhaps more importantly, the plaintiff's number-crunching on multiple scenarios distracts the Court from the realistic likelihood that Western's claims will all be rendered moot.

In addition to voting on the election of directors at the meeting scheduled for June 28, 2010, Fund stockholders will also vote on a proposal to merge the Fund with and into DWS Enhanced Commodity Strategy Fund, an open-end registered investment company with substantially similar investment objectives.  (*See* GCS 4/9/10 Press Release; Ex. 4.)  If that proposal is adopted and implemented, none of the plaintiff's claims will survive.  Instead, the plaintiff's shares will be converted into the right to receive shares in the open-end fund, and the plaintiff's claims concerning the election of directors and the right to vote certain shares of a Fund that no longer exists will self-evidently be moot.  The separate existence of the Fund will cease; it will have no board for Western to seek election of directors; and it will have no contract for Western to seek to terminate.

We respectfully submit that it is highly likely that the merger will be approved by stockholders, as converting to an open-end fund will eliminate the trading discount to net asset value that the Fund's shares have experienced.  Indeed, based upon its past behavior and public comments, we speculate with some confidence that Western itself may vote in *favor* of the merger.  *See, e.g.*, Western's Proxy Statement on Schedule 14A concerning the Fund, available at http://www.sec.gov/Archives/edgar/data/1286207/000092189508002346/defc14a06290021_0 9052008.htm at 4 at (asserting that the Fund's directors had a "responsibility to . . . consider all actions to eliminate or reduce the NAV discount, including, among other things, . . . open-ending" the Fund).  Western conspicuously did not respond in its April 19 submission to this

---

inability to solicit proxies, and not the inability to vote any shares, that the court in *Dan River* said might "deter some shareholders from tendering."  *Dan River*, 701 F.2d at 284.

Court regarding the suggestion in GCS's April 13 letter to the Court that all of Western's claims will become moot once the proposed merger is approved by the stockholders.  Any effort by Western to argue that it may vote against the merger should be seen as a transparent effort to procure a ruling from this Court that Western hopes to use to its advantage in other proxy contests that it has threatened against other closed-end funds managed by the same investment adviser.

> ### D. The Court Should Not Enter a Preliminary Injunction or Declaratory Judgment That Is Merely Advisory.

As a final matter, the plaintiff has asked this Court to issue a declaratory judgment in its favor.  In the present circumstances, this alternative remedy by itself would do *nothing* to alter the standing of the parties.  "Unlike damages and injunctive relief, which apply significant sanctions and thereby deter future conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature."  *Browning Debenture Holders' Comm. v. Dasa Corp.*, 524 F.2d 811, 816 (2d Cir. 1975).  A declaration of law merely "advising [Western] of [its] right to" vote certain shares at the stockholders' meeting, while not forcing rescission by the Board of Directors of its already-completed adoption of the MCSAA, "strains the concept of 'case or controversy' to its outer limit."[13] *Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d. 702, 704 (S.D.N.Y. 1999).  By asking for a declaratory judgment, Western is "ask[ing] this Court to assume that [Western] will commence suit" if a portion of its shares are not counted at the meeting on June 28.  *Id.*  This Court should not make such assumptions since Western has already suggested that it would be agreeable to open-ending the Fund.

---

[13] Plaintiff's request for a permanent injunction is similarly premature, since a "permanent injunction will issue only after a right thereto has been established at a trial on the merits."  11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2941 (2d ed. 1987).  A full trial has yet to even be scheduled.

Furthermore, this Court should decline to issue a declaratory judgment on ripeness grounds. Disputes must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotations omitted). As Judge Robinson of this District recently explained:

> Presence of a justiciable case or controversy is a *sine qua non* of federal judicial power; this requirement is not avoided by the procedural device of declaratory judgment, which itself requires an actual controversy. In declaratory judgment actions, ripeness remains a "constitutional prerequisite to exercise of jurisdiction by federal courts." *Fed. Election Comm'n v. Cent. Long Island Tax Reform Comm.*, 616 F.2d 45, 51 (2d Cir. 1980). . . . The ripeness doctrine "cautions courts against adjudicating contingent future events that may not occur as anticipated, or indeed may not occur at all," *United States v. Broad. Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001) (internal quotation marks and citations omitted), and "prevents courts from declaring the meaning of law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003).

*Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 374-75 (S.D.N.Y. 2009). Because Western has not shown that it has some telepathic ability to predict future events, its request for a declaratory judgment should be denied.

## CONCLUSION

For all the foregoing reasons, the Court should deny the plaintiff's motion for a preliminary injunction and declaratory judgment.

Dated:  April 30, 2010
New York, New York

ROPES & GRAY LLP

By:   /s/ John D. Donovan, Jr.
John D. Donovan, Jr.
One International Place
Boston, MA 02210-2624
john.donovan@ropesgray.com
Telephone: (617) 951-7000
Facsimile: (617) 235-0023

Martin J. Crisp
David M. Elihu *(admission pending)*
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone (212) 596-9000
Facsimile: (212) 596-9090
*Attorneys for DWS Enhanced Commodity*
*Strategy Fund, Inc.(f/k/a DWS Global*
*Commodities Stock Fund, Inc.)*

20