**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| WESTERN INVESTMENT LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DWS GLOBAL COMMODITIES STOCK FUND, INC.,<br><br>　　　　　Defendant. | Civil Action No. 10-CV-1399 (MGC) |


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR DECLARATORY JUDGMENT BARRING DEFENDANT'S ENFORCEMENT OF THE MARYLAND CONTROL SHARE ACQUISITION ACT**

|  |  |
|---|---|
|  | John D. Donovan, Jr.<br>ROPES & GRAY LLP<br>One International Place<br>Boston, Massachusetts  02110-2624<br>(617) 951-7000 |
|  | Martin J. Crisp<br>ROPES & GRAY LLP<br>1211 Avenue of the Americas<br>New York, New York  10036-8704<br>(212) 596-9193 |
| May 28, 2010 | *Attorneys for DWS Enhanced Commodity Strategy Fund, Inc. (f/k/a/ DWS Global Commodities Stock Fund, Inc.)* |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.  WESTERN'S ONLY REMAINING CLAIMS ARISE UNDER MARYLAND LAW AND SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION. ............................................................................3

   A.  Western Cannot Show Proper Diversity Jurisdiction Because It Cannot Satisfy the Statutory Amount in Controversy Requirement. .....................................4

   B.  Judicial Economy, Convenience, Fairness and Comity All Weigh in Favor of Dismissing the Remaining Supplemental Claims That Arise Under 28 U.S.C. § 1367...........................................................................5

II. PLAINTIFF'S TWO REMAINING STATE LAW CLAIMS ARE MOOT AND A DECLARATORY JUDGMENT COULD NOT RESOLVE ANY OSTENSIBLE CONTROVERSY BETWEEN THE PARTIES. ........................................8

III. WESTERN'S INABILITY TO VOTE THE SHARES IT ACQUIRED AFTER SEPTEMBER 11, 2009 IS CONSISTENT WITH BOTH THE FUND'S ARTICLES OF INCORPORATION AND THE MCSAA. ................................9

   A.  GCS's Articles of Incorporation Permit Its Adoption of the MCSAA......................9

   B.  GCS Has Applied the MCSAA Appropriately and Consistently with Relevant Precedent. ..............................................................................14

CONCLUSION.....................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Standard, Inc. v. Oakfabco, Inc.*,
   498 F. Supp. 2d 711 (S.D.N.Y. 2007)................................................................................1, 3, 4

*Baptiste v. The W Hotel*,
   No. 04-5544 (DLC), 2005 U.S. Dist. LEXIS 7721 (S.D.N.Y. Apr. 27, 2005).........................5

*Browning Debenture Holders' Comm. v. Dasa Corp.*,
   524 F.2d 811 (2d Cir. 1975)......................................................................................................9

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988)..................................................................................................................6

*CCS Int'l, Ltd. v. ECI Telesystems, Ltd.*,
   No. 97 Civ. 4646 (LAP), 1998 U.S. Dist. LEXIS 12755 (S.D.N.Y. Aug. 18, 1998) .................7

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,
   442 F.3d 767 (2d Cir. 2006)......................................................................................................4

*Doninger v. Niehoff*,
   527 F.3d 41 (2d Cir. 2008)........................................................................................................9

*E.ON AG v. Acciona, S.A.*,
   468 F. Supp. 2d 559 (S.D.N.Y. 2007).......................................................................................3

*Harvard Real Estate-Allston, Inc. v. Kmart Corp.*,
   407 F. Supp. 2d 317 (D. Mass. 2005) .......................................................................................5

*Hunt v. Wash. St. Apple Adver. Comm'n*,
   423 U.S. 333 (1977)..................................................................................................................4

*Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N.Y.*,
   464 F.3d 255 (2d Cir. 2006)......................................................................................................5

*Law Audit Servs., Inc. v. Studebaker Tech., Inc.*,
   No. 96 Civ. 0926 (LMM), 1996 U.S. Dist. LEXIS 3621 (S.D.N.Y. Mar. 27, 1996) ............4, 5

*Morse v. Univ. of Vermont*,
   973 F.2d 122 (2d Cir. 1992)......................................................................................................7

*N.Y. Mercantile Exch., Inc. v. Intercontinentalexchange, Inc.*,
   497 F.3d 109 (2d. Cir. 2007).....................................................................................................7

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr.*,
    485 F. Supp. 2d 631 (D. Md. 2007) .................................................................................. 14, 15

*Presidential Gardens Assocs. v. United States*,
    175 F.3d 132 (2d Cir. 1999) ................................................................................................. 1, 3

*Rounseville v. Zahl*,
    13 F.3d 625 (2d Cir. 1994) ....................................................................................................... 6

*Seabrook v. Jacobson*,
    316 F.3d 299 (2d Cir. 1998) .................................................................................................. 6, 7

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) .................................................................................................................. 15

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) .................................................................................................................. 6

*Zweig v. Nat'l Mortgage Bank of Greece*,
    No. 91 Civ. 5482 (CSH), 1993 U.S. Dist. LEXIS 8460 (S.D.N.Y. June 21, 1993) .................. 7

**STATUTES AND REGULATIONS**

28 U.S.C. § 1332 (2006) ............................................................................................................ 1, 4, 5

28 U.S.C. § 1367 (2006) .................................................................................................................... 5

Chapter 51, House Bill No. 179, 1989 Md. ALS 51 ....................................................................... 15

Investment Company Act of 1940 ......................................................................................... 1, 10, 15

Maryland General Corporation Law ............................................................................... 2, 10, 11, 13

MD. CODE ANN., CORPS. & ASS'NS § 2-105 (West 2010) ............................................................ 10

MD. CODE ANN., CORPS. & ASS'NS § 2-507 (West 2010) ................................................... 10, 11, 13

MD. CODE ANN., CORPS. & ASS'NS § 3-701 *et seq*. (West 2010) ....................................... 10, 12, 13

**INTRODUCTION**

Western's abandonment of its only remaining claims under the Investment Company Act of 1940 divests this Court of subject matter jurisdiction. Because all of Western's federal claims have been dismissed or withdrawn, federal question jurisdiction is absent. As Western admits in its May 20 memorandum of law, it retains only two outstanding claims. Both of those claims arise solely under Maryland law. Consequently, subject matter jurisdiction is appropriate only if the requirements for diversity jurisdiction are met. But they are not. Although the parties are citizens of diverse states, Western cannot satisfy the statutory requirement that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332 (2006). As Western acknowledged during the May 6 hearing, it will suffer "no tangible harm" if this Court refuses to grant its request for injunctive relief. That admission is accurate. The requested relief – the ability to vote an additional 2.2% of its shares of defendant DWS Global Commodities Stock Fund, Inc. ("GCS" or "the Fund") at the June 28, 2010 stockholders' meeting – has no tangible value and cannot satisfy the amount in controversy requirement.

GCS raises this issue now because Western formally abandoned its claims under Sections 16 and 18 of the Investment Company Act only last week. (*See* Docket Entry 24, Pl.'s May 19 Notice of Partial Voluntary Dismissal; Docket Entry 25, Pl's May 20 Reply Mem. of Law at 1-2.) But an argument that subject matter jurisdiction is absent may be raised "at any time, by any party," *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 140 (2d Cir. 1999), and may not be waived. *See Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007) (citing *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133 (2d Cir. 2006)).

1

Of course, even if this Court retains subject matter jurisdiction over Western's remaining claims under Maryland law, those claims still fail as a matter of law.[1]  Western's claims that the Fund may not apply the Maryland Control Share Acquisition Act ("MCSAA") to shares held by Western amounting to 2.2% of the Fund's outstanding shares because the MCSAA ostensibly conflicts with the Fund's charter, and because the application would violate the Act itself, are meritless.  As set forth below, Western selectively reads the Maryland General Corporation Law ("MGCL") and ignores the statutory language, case law and legislative history.

---

[1] Western cannot demonstrate that it will be irreparably harmed by an inability to vote those shares.  As the Court recognized at the May 6 hearing, this is not a case where this Court could not fashion remedial relief following the conclusion of the June 28 stockholders' meeting if Western could show tangible harm.  Indeed, Western admitted at the May 6 hearing that it would likely support the merger proposed at the stockholders' meeting regardless of the outcome of this litigation.  If that merger is approved, then Western's remaining Maryland state law claims would be moot.  But Western would have the Court adjudicate a corporate election preemptively to remedy an alleged injury that, even if it occurred, would cause Western "no tangible harm."

2

**ARGUMENT**

I. **WESTERN'S ONLY REMAINING CLAIMS ARISE UNDER MARYLAND LAW AND SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

"An argument that subject-matter jurisdiction is lacking may be raised at any time, by any party, or even *sua sponte* by the court," *Presidential Gardens Assocs.*, 175 F.3d at 140, and may not be waived. *Am. Standard, Inc.*, 498 F. Supp. 2d at 715. Because Western seeks to invoke this Court's jurisdiction, it "bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 559, 571-72 (S.D.N.Y. 2007). Western cannot meet that burden, and this Court should therefore dismiss Western's remaining state law claims for lack of subject matter jurisdiction.

At the May 6 hearing held before this Court, Western announced its intention to voluntarily withdraw its claim that adoption of the MCSAA violated Section 18(i) of the Investment Company Act. Western carried out its pledge on May 19, 2010. (*See* Docket Entry 24, Pl.'s May 19 Notice of Partial Voluntary Dismissal.) Western also abandoned as moot its claim under Section 16 of the Investment Company Act. (*See* Docket Entry 25, Pl.'s May 20 Reply Mem. of Law at 1–2.) Western admits that the current controversy presents only two remaining issues of law: first, whether GCS's adoption of the MCSAA violates the Fund's Articles of Incorporation; and second, whether GCS's interpretation of the MCSAA is appropriate under the terms of that statute. (*See id.* at 2.) Because Western has abandoned its federal claims, it can only satisfy its burden to demonstrate subject matter jurisdiction by showing that there is proper diversity jurisdiction. Although the parties are diverse, Western cannot meet this burden because it cannot satisfy the statutory $75,000 amount in controversy requirement.

3

### A. *Western Cannot Show Proper Diversity Jurisdiction Because It Cannot Satisfy the Statutory Amount in Controversy Requirement.*

It is axiomatic that diversity jurisdiction is appropriate only where the party seeking to invoke the Court's jurisdiction can show that the amount in controversy exceeds the $75,000 statutory requirement. *See* 28 U.S.C. § 1332 (2006); *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006). Western has failed to identify *any* harm that will result from the sterilization of certain of its shares at the June 28, 2010 stockholders' meeting. Indeed, at the May 6 hearing held before this Court, Western admitted that an inability to vote that fraction of its shares at the stockholders' meeting would cause it "no tangible harm." Western was also unable to explain how the vote would be any different if it were indeed allowed to vote the small number of shares at issue here. The amount in controversy between the parties is zero, far short of the $75,000 statutory requirement.

Where, as here, the plaintiff is "seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The value cannot be "immeasurable," and the party seeking jurisdiction "cannot meet its burden of proof with mere conclusory allegations of indirect or speculative value." *Am. Standard, Inc.*, 498 F. Supp. 2d at 717–18 (citations omitted). Western cannot satisfy its burden to demonstrate the amount in controversy requirement by suggesting that the object of this litigation is to somehow, down the line, reap a profit of more than $75,000 through its shares of the Fund, since any such future profit would not relate to the present litigation directly. *See, e.g.*, *Law Audit Servs., Inc. v. Studebaker Tech., Inc.*, No. 96 Civ. 0926 (LMM), 1996 U.S. Dist. LEXIS 3621, at *11 (S.D.N.Y. Mar. 27, 1996) ("The jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources.");

*Harvard Real Estate-Allston, Inc. v. Kmart Corp.*, 407 F. Supp. 2d 317, 320–21 (D. Mass. 2005) ("[M]erely because there is ultimately an issue involving a great deal of money lurking somewhere in the relationship between the parties is no reason to transform this state statutory mechanism into a matter involving federal court diversity jurisdiction."). Western's complaint and its subsequent court submissions contain no request for money damages, and are silent as to the value of its requested injunctive relief. As such, Western "has neither alleged specific values, nor proven that they flow directly from" its ability to vote the small number of shares at issue. *Law Audit Servs.*, 1996 U.S. Dist. LEXIS 3621, at *11.

The true object of the present litigation is Western's attempt to secure an advisory opinion that it can use in present and future attacks on other investment funds incorporated in Maryland. There is simply no amount in controversy as it pertains to the jurisdictional requirement under 28 U.S.C. § 1332. Western confirmed as much when it admitted at the May 6 hearing that the injury alleged here would cause it "no tangible harm." Western also admitted during the May 6 hearing that it will likely vote in favor of GCS's proposal to merge the Fund into DWS Enhanced Commodity Strategy Fund *regardless* of whether this Court issues an injunction in its favor prior to the June 28 stockholders' meeting. If that merger proposal is approved, then all of Western's claims will be moot and will have no value at all.

      **B.**    *Judicial Economy, Convenience, Fairness and Comity All Weigh in Favor of Dismissing the Remaining Supplemental Claims That Arise Under 28 U.S.C. § 1367.*

"After dismissing a plaintiff's federal claims, a court must reassess its jurisdiction over the case." *Baptiste v. The W Hotel*, No. 04-5544 (DLC), 2005 U.S. Dist. LEXIS 7721, at *15 (S.D.N.Y. Apr. 27, 2005) (internal quotations and citations omitted). The decision to maintain jurisdiction in these circumstances is "discretionary and not a litigant's right." *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006); *see also*

28 U.S.C. § 1367(c)(3) (2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, the *Cohill* factors weigh in favor of dismissing Western's Maryland law claims. Comity concerns counsel in favor of dismissal because Western is asking this Court for nothing other than an advisory opinion on arguably unsettled issues of Maryland law. Such claims of Maryland law and Maryland statutory construction are more properly pursued in the Maryland state courts, which possess the authority to definitively settle the two remaining issues of Maryland law. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

The Second Circuit's opinion in *Seabrook v. Jacobson*, 153 F.3d 70 (2d Cir. 1998), is particularly instructive here. In *Seabrook*, the Second Circuit held that the district court abused its discretion when it retained jurisdiction over an ancillary state law claim after the federal claims had been dismissed. *Id.* at 72–74. The Second Circuit also held that a district court's authority to retain jurisdiction over an ancillary state law claim was lessened where, as here, the remaining claim "turns on a question of state law which not only is undecided, but which also requires a balancing of numerous important policies of state government." *Id.* at 73. The *Seabrook* Court stated that:

> Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts. This is particularly true if the

6

> federal claim on which the state claim hangs has been dismissed. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (holding that, where the state claim required an application of state law that was potentially novel, the state claim was appropriately resolved in state court, and retention of the state claim after the dismissal of the federal claim "would be an inappropriate exercise of pendent jurisdiction and a waste of judicial resources"); *Morse v. Univ. of Vermont*, 973 F.2d 122, 127–28 (2d Cir. 1992) (holding that where state claims involved novel questions of state law, it was an abuse of discretion to exercise jurisdiction over the state claims after dismissing the federal claims).

*Id.* at 72. Here, Western asks this Court to rule upon issues of Maryland law that no Maryland state court has addressed. Maryland has a strong interest in providing Maryland corporations with a clear and definitive interpretation of the MCSAA. Given that compelling interest and the unsettled law surrounding the MCSAA, comity principles favor dismissal.

Judicial economy and convenience also weigh in favor of dismissal. This litigation has been pending only for a few months, there has been no discovery, no case management schedule has been set and the court has made no findings of fact. In short, this litigation has not progressed to the point at which it would be inefficient for it to be dismissed and resumed in Maryland state court. Indeed, since the June 28 stockholders' vote has not yet occurred, and nobody has determined whether voting of the shares at issue could possibly be outcome determinative, resolving Western's state law claims would force this Court to " resolv[e] additional issues of fact, making dismissal of those claims after the federal claims ha[ve] been dismissed particularly appropriate." *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d. Cir. 2007) (internal citation omitted). Additionally, dismissing Western's supplemental claims under Maryland law would reduce the burden on this Court's already taxed docket. *See, e.g.*, *CCS Int'l, Ltd. v. ECI Telesystems, Ltd.*, No. 97 Civ. 4646 (LAP), 1998 U.S. Dist. LEXIS 12755, at *30 (S.D.N.Y. Aug. 18, 1998) ("It is well-recognized that the Southern District of New York is a heavily congested district."); *Zweig v. Nat'l Mortgage Bank of Greece*, No. 91 Civ. 5482 (CSH), 1993 U.S. Dist. LEXIS 8460, at *18

(S.D.N.Y. June 21, 1993) ("It is scarcely necessary to dwell on the fact that this Court is the most heavily burdened Federal District court in the country.").

There are no fairness concerns that weigh against a dismissal. Western would not be unduly prejudiced by a dismissal, as it remains within the applicable statute of limitations and could re-file its claims in Maryland state court. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101 (West 2010). Neither party has expended substantial efforts in discovery or trial preparation, and both parties remain able to litigate this case fully and without prejudice in Maryland state court.

## II. PLAINTIFF'S TWO REMAINING STATE LAW CLAIMS ARE MOOT AND A DECLARATORY JUDGMENT COULD NOT RESOLVE ANY OSTENSIBLE CONTROVERSY BETWEEN THE PARTIES.

Western's May 20 memorandum of law clouds the issue of its requested relief, discussing only its request for a declaratory judgment while remaining silent on its pending claim that the Court provide such a declaratory judgment as injunctive relief in advance of the June 28 stockholders' meeting.

The Fund showed in its April 30 memorandum of law that Western's allegations of irreparable injury were based on an array of contingencies that it simply could not prove. In its first question to either counsel, this Court challenged Western on its allegations of harm at the May 4 hearing. Western not only failed to show why any supposed harm was irreparable, it also admitted that Western was not and could not suffer any "tangible harm" at all. Moreover, Western admitted that its case is now moot, as it admitted that it will likely vote for the proposed merger regardless of the outcome of this case.

Western now directs this Court's attention to its request for a declaratory judgment, but continues to ask this Court for relief that amounts to a preliminary injunction. (Docket Entry 25 Pl.'s May 20 Reply Mem. of Law at 11 ("The Court should grant Plaintiff's motion for declaratory relief *and compel GCS to recognize Western and the Western Group's right to vote*

8

*all of their shares at the June 28, 2010 annual meeting and for all other purposes*.") (emphasis added).) But "[u]nlike damages and injunctive relief, which apply significant sanctions and thereby deter future conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature." *Browning Debenture Holders' Comm. v. Dasa Corp.*, 524 F.2d 811, 816 (2d Cir. 1975). This Court is not in the business of issuing advisory opinions, and should not allow a plaintiff to manufacture a case or controversy when none exists.

For a more detailed explanation of why a declaratory judgment that necessarily provides plaintiff's requested injunctive relief would be improper, the Court should refer to the Fund's April 30 reply memorandum of law. (*See* Docket Entry 21 Def.'s Apr. 30 Reply Mem. of Law at 18–19.)

### III.   WESTERN'S INABILITY TO VOTE THE SHARES IT ACQUIRED AFTER SEPTEMBER 11, 2009 IS CONSISTENT WITH BOTH THE FUND'S ARTICLES OF INCORPORATION AND THE MCSAA.

#### A.   *GCS's Articles of Incorporation Permit Its Adoption of the MCSAA.*

Western insists that the Court should read the language of the Fund's Articles of Incorporation to see if they prohibit GCS's adoption of the MCSAA. Yet even a reading of the Articles of Incorporation in a vacuum, as plaintiff suggests, still does not satisfy its required showing of a "clear or substantial likelihood of success on the merits." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (internal quotation marks and citation omitted).

Article V, Section 4 of the Fund's charter discusses the Fund's capital structure and sets forth that the Fund may have different classes of common stock. But Western focuses only on the first sentence of Section 4 and omits any reference to the second and final sentence, which states: "The board of directors may reclassify any unissued shares of Common Stock from time to time in one or more classes or series of stock." (*See* Docket Entry 23, May 3 Crisp Declaration, Ex. 5 at 2.) This section of the charter, along with the two that follow it, Article V,

9

Sections 5–6, all address the power dynamics between different layers of the capital structure. They do not address a possible limitation on the exercise of certain voting rights by certain stockholders. And they nowhere require that any such limitation be adopted only through shareholder vote. (*See id.* at 2–3.)[2]

Instead of the more logical reading of simply restating the one vote per share default position of Section 2-507(a) of the MGCL, Western argues without any analysis or factual support that the first sentence of Article V, Section 4 of the Fund's charter instead grants stockholders an additional, special "inalienable" right to vote their shares. (*See* Docket Entry 25 Pl.'s May 20 Reply Mem. of Law at 7.) This argument is illogical. While Section 2-507(a) states that, as a default position "each outstanding share of stock . . . is entitled to one vote," as a practical matter a share of stock cannot actually vote. Therefore, Section 2-507(a) can only be read to entitle the holder of each share of stock to one vote.

Further, Western itself notes that under Section 2-507(a), one vote per share is the default "unless the charter provides for a different number of votes per share." (*See* Docket Entry 25 Pl.'s May 20 Reply Mem. of Law at 7.) Section 2-507(a) actually states that one vote per share is the rule unless the charter provides for "a greater or lesser number of votes . . . or limits or denies voting rights." MD. CODE ANN., CORPS. & ASS'NS § 2-507(a) (West 2010). Section 2-105(a)(1) also addresses this issue, stating that "[a] corporation may provide by its charter . . . for one or more classes of stock, the voting rights of each class, and any restriction on or denial

---

[2] Even if Article V, Section 4 had the incorrect meaning that Western suggests, then by the terms of its companion section, Article V, Section 6, all that would be required to alter voting rights of shares would be resolution by the board of directors. (*See* Docket Entry 23, Crisp Declaration, Ex. 5 at 3 ("Prior to issuance of classified or reclassified shares of any class or series, *the board of directors by resolution shall* . . . ." (emphasis added).) Western's misinterpretation of Section 4 also fails to account for the fact that the MGCL states that opting into the MCSAA requires only a board resolution. MD. CODE ANN., CORPS. & ASS'NS § 3-702(c)(4) (West 2010) ("[A] corporation registered under the Investment Company Act of 1940 as a closed end investment company" can opt into the MCSAA if "its board of directors adopts a resolution to be subject to this subtitle. . . .").

10

of these rights." MD. CODE ANN., CORPS. & ASS'NS § 2-105(a) (West 2010).  Sections 2-507(a) and 2-105(a)(1), therefore, do not permit a Maryland corporation via charter provision to grant voting rights inconsistent with Section 2-507(a) *except with respect to the number of votes per share*.  The Fund's charter, however, *does not* provide for a greater or lesser number of votes per share or restrict or limit or deny voting rights – it only provides that each share of common stock entitles the holder thereof to one vote.  As a result, Western's argument that the Fund's charter's plain English rewording of Section 2-507(a) somehow moves the voting rights inherent in the stock and granted to stockholders through their ownership of that stock and vests it with the stockholders themselves (as a "holder") – thereby providing the holder greater, "inalienable" rights to vote the stock far beyond those provided in the MGCL itself – cannot stand.  Consequently, the Fund's charter can only be read as consistent with Section 2-507(a)'s one vote, one share provision, as each share of stock entitles the holder thereof to one vote unless, as provided for in the MCSAA, those shares are held by certain stockholders whose voting rights have been curtailed by the MCSAA.

In addition, the sentence from Article V, Section 4 of the Fund's charter refers to the holders of shares generally and makes no mention of "specifically identified or unidentified existing or future stockholders."  The Fund was incorporated four years after the relevant amendments to the MCSAA, and the Fund would have certainly been more clear if it had wanted to bind the hands of the Board of Directors from ever opting into a law that had been recently passed by the Maryland General Assembly for the benefit of closed end funds.  That is, if the Fund had wanted the acquisition of all shares by all holders to be forever exempt from the MCSAA, it would have said so in the Charter.

11

The relevant provision from the MCSAA also speaks to the voting rights of the shares themselves: "[c]ontrol shares of the corporation acquired in a control share acquisition have no voting rights except to the extent approved by the stockholders at a meeting held under § 3-704 of this subtitle by the affirmative vote of two-thirds of all the votes entitled to be cast on the matter, excluding all interested shares." MD. CODE ANN., CORPS. & ASS'NS § 3-702(a)(1) (West 2010).

This distinction is significant. (*See* Docket Entry 21 Def.'s Apr. 30 Reply Mem. of Law at 7–13.) The MCSAA's mechanism of action is to limit the voting rights of certain shares, "control shares," in the hands of stockholders who, as here, owned in excess of 10% of the shares outstanding at the time the board opted into the MCSAA. A stockholder that has triggered the provisions of the MCSAA can sell its "control shares," and the buyer of those shares would have all the voting rights that such shares would otherwise possess absent the application of the MCSAA. "[N]one of the shares issued by GCS are 'control shares;' they might become 'control shares' only in the hands of particular stockholders who voluntarily assume that status through their own actions." (*Id.* at 11.) Under the MCSAA, stockholders with control shares must obtain approval from other stockholders before they are allowed to vote those shares. But that doesn't change the fact that those shares, in the hands of another holder, would have full voting rights.

Western also misreads Section 3-702(b) of the MCSAA, which allows a corporation to prevent the MCSAA from applying to certain stockholders. Under that section, the a corporation is prohibited from adopting the MCSAA by board resolution *only if* "the acquisition of the shares specifically, generally, or generally by types, as to specifically identified or unidentified existing or future stockholders or their affiliates or associates, has been approved or exempted by a provision contained in the charter or bylaws and adopted at any time before the acquisition of

the shares." MD. CODE ANN., CORPS. & ASS'NS § 3-702(b) (West 2010). The single disputed sentence from the Fund's charter, even if given a liberal reading most favorable to the plaintiff, could never be interpreted as referring to the "acquisition of the [control] shares." The Fund's charter makes no mention of "after-acquired shares," or "control shares," the shares whose voting rights the MCSAA limits, or any "acquisition" of shares whatsoever. But such a reference is specifically required under Section 3-702(b) for a corporation to prevent the MCSAA from applying to certain stockholders once the MCSAA is applicable to the corporation. *Id.* ("This subtitle does not apply to the voting rights of shares of stock if the acquisition of the shares. . . .").

The plaintiff's reading of Section 2-507(a) of the MGCL is also illogical because it would prevent *any* corporation, not just the Fund, from opting into the MCSAA absent a shareholder vote. According to Western, "under [Section 2-507(a) of] the MGCL, each share presumptively carries with it one vote, unless *the charter* provides for a different number of votes per share." (Docket Entry 25 Pl.'s May 20 Reply Mem. of Law at 7 (emphasis in original).) Western's reading of Section 2-507(a) is erroneous, since a "board of directors" need only "adopt[] a resolution to be subject to" the provisions of the MCSAA. MD. CODE ANN., CORPS. & ASS'NS § 3-702(c)(4) (West 2010). The restatement in the charter of Section 2-507(a) of the MGCL simply does not prevent the Board of Directors from opting into the MCSAA at a later date.

Lastly, and regardless of Western's assertions to the contrary, how other Maryland investment funds drafted their charters is certainly relevant in interpreting the Fund's charter. Market practice helps define market understanding. The Fund's charter, the charter of the closed-end fund in the *Neuberger Bergman* litigation, and *all* of the publicly available charters for the Maryland closed-end funds of Blackrock, Inc. – widely considered to be the world's

13

largest money manager – are all in harmony. All of these funds' charters speak in terms of the "holders" of shares, rather than in terms of the voting rights of shares themselves.

### B. GCS Has Applied the MCSAA Appropriately and Consistently with Relevant Precedent.

Western further contends that this Court should ignore the MCSAA's legislative history and the *only* case interpreting the MCSAA's applicability to the issues presented in this litigation. It rejects the holding in *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*, 485 F. Supp. 2d 631 (D. Md. 2007), but it fails to provide the Court with any cases that can support its position of "grandfathering in" the voting rights of the after-acquired shares. Western then says that the *Neuberger Berman* court "stretch[ed] to find a legislative intent." (Docket Entry 25 Pl.'s May 20 Reply Mem. of Law at 8.) This assertion is incorrect. The legislature amended the MCSAA in 2000 *specifically* to allow closed-end funds to benefit from the Act's provisions.[3] *See* Bill Analysis, House Bill 851, Senate Judicial Proceedings Committee, 2000 Maryland General Assembly; Docket Entry 23, Crisp Declaration, Ex. 8 at 4 ("The bill also allows closed-end investment companies to elect to be subject to, and *obtain the advantages of*, the control share acquisition statute." (emphasis added)). The defendants have provided this Court with over 40 pages of legislative history describing the purpose and reasoning behind the Maryland legislature's adoption of the MCSAA, and how it is consistent with having the limitation rights apply to the after-acquired shares as well. (*See* Docket Entry 23, Crisp Declaration; Exs. 6–8; *see also* Docket Entry 21 Def.'s Apr. 30 Reply Mem. of Law at 11–12.) Western dismisses all of this legislative support, as well as the *Neuberger Berman* court's analysis of the legislative intent, *Neuberger Berman*, 485 F. Supp. 2d at 641, without

---

[3] The Fund was incorporated four years after the Maryland Legislature decided to allow closed-end funds to benefit from the provisions of the MCSAA. (*See* Docket Entry 23, Crisp Declaration, Ex. 5 at 12.)

14

explanation, despite not providing this Court with a single sentence of legislative history in its favor.

Moreover, Western's proposed reading of Section 3-702(c)(4) of the MCSAA, which would exempt it from limitations on the voting rights of its after-acquired shares, would render this portion of the statute superfluous.[4] Prior to the amendments in 2000, investment companies were altogether prohibited from opting into the MCSAA. MCSAA § 3-702(c)(3), Chapter 51, House Bill No. 179, 1989 Md. ALS 51 ("This subtitle does not apply to an investment company registered under the Investment Company Act of 1940."). Even though the Maryland General Assembly in 2000 decided to allow closed-end funds to benefit from the MCSAA, Western's proposed reading would allow it to vote as many shares as it desired, which would render meaningless the Maryland legislature's decision to permit closed end funds to opt in to the MCSAA. The statute cannot be read in this way. *See Neuberger Berman*, 485 F. Supp. 2d at 641 ("If the statute were interpreted in such a manner, then the protection the law intended to afford to minority shareholders from coercive, hostile takeover attempts would be merely illusory."). The plaintiff's reading of Section 3-702(c)(4) of the MCSAA falls far short of satisfying the heightened requirement of establishing a "clear or substantial likelihood of success on the merits," and should be rejected.

---

[4] The United States Supreme Court has cautioned against reading statutory provisions in a way that render them superfluous, stating that "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. Were we to adopt [the defendant's] construction of the statute, [the clause at issue] would be rendered insignificant, if not wholly superfluous. We are reluctant to treat statutory terms as surplusage in any setting, and we decline to do so here." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citations omitted).

15

## CONCLUSION

The present litigation continues to be a burden on the time and resources of this Court. If Western wishes, it can consider filing a suit in Maryland state court on the two remaining state claims, *after* the election is held. But federal jurisdiction is no longer proper, and this case should be dismissed accordingly.

In the alternative, this Court should deny the plaintiff's motion for a preliminary injunction and/or declaratory judgment.

Dated:  May 28, 2010
New York, New York

ROPES & GRAY LLP

By:  /s/ John D. Donovan, Jr.
John D. Donovan, Jr.
One International Place
Boston, MA 02210-2624
john.donovan@ropesgray.com
Telephone: (617) 951-7000
Facsimile: (617) 235-0023

Martin J. Crisp
David M. Elihu *(admission pending)*
1211 Avenue of the Americas
New York, NY 10036-8704
martin.crisp@ropesgray.com
david.elihu@ropesgray.com
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
*Attorneys for DWS Enhanced Commodity Strategy Fund, Inc.(f/k/a DWS Global Commodities Stock Fund, Inc.)*